**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SHAQUISHA ROGERS, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| THE PINNACLE SCHOOL, LLC | : | |
| | : | |
| Defendant. | : | AUGUST 27, 2023 |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; and Connecticut state law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

**PLAINTIFF**

5. The Plaintiff, Shaquisha Rogers ("Plaintiff" or "Rogers"), is a natural person and resident of the State of Connecticut.

**DEFENDANT**

6. The Defendant, The Pinnacle School, LLC ("Defendant" or "The Pinnacle School"), is a Connecticut limited liability company that is registered to conduct business in the

-1-

State of Connecticut, and conducts substantial business within the State of Connecticut at 201 High Ridge Road, Stamford, CT 06905, where Plaintiff was employed.

7. Defendant employs more than fifteen (15) employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Rogers received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission on June 2, 2023.

## FACTUAL ALLEGATIONS

9. Rogers, a black African-American, was hired by Defendant in or about June 2021 for the position of special education teacher. Rogers always performed her job duties in a satisfactory manner.

**A. Rogers Was Subjected to Consistent and Severe Harassment.**

10. Unfortunately, throughout her employment, Rogers consistently suffered a hostile work environment where she was subjected to highly offensive comments about her race by students.

11. During the 2021-2022 school year, students repeatedly used the n-word, (with the "er" at the end). These incidents were witnessed and brought to the attention of leadership. However, there was no accountability for the students' actions and no actions were taken to prevent this hostile working environment.

12. When Rogers began working at The Pinnacle School during the Extended School Year program, there were discussions about the racist and homophobic language that students *regularly* used to the point that staff and students were feeling uncomfortable.

13. As a result, a meeting occurred for the students attending this program, however, their behavior of using offensive language continued.

14. At the beginning of the 2021 school year, Rogers brought this issue to the attention of the Assistant Director and Lower School Leader, Stephanie Kreisgman ("Kreisgman") (Caucasian), and the Director, Charlie Manos ("Manos") (Caucasian and Hispanic). Both were open to the conversation but did not have any clear consequences for students who would continue using racial slurs.

**B. The Pinnacle School's Failure to Take Action Causes the Hostile Environment to Continue.**

15. During the school year, several students repeatedly used the n-word as a word.

16. For instance, there was an incident where a student used the n-word toward the only black student in the lower school.

17. However, there was no clear response on whether or not Kreigsman contacted the student's parents about the language used toward their son and at the school.

18. Further, a student asked Rogers if it was okay to say the n-word on more than one occasion.

19. On a separate occasion, a student wrote a letter to another staff member stating, "I'm sorry for being a racist."

20. In another incident, a student became upset after leaving Rogers' class. When he entered the "cool down" room to de-escalate with Kreigsman, the student stated the n-word and Kriegsman reminded him calmly that they do not say that word. Unfortunately, the room was right next to Rogers' classroom.

21. An additional incident that Rogers did not witness but was discussed among other staff involved a student shouting the n-word in front of the school building. Another staff shared that a student called her the n-word.

22. Teachers that worked at The Pinnacle School the previous year stated that the students did not use racial slurs last year. However, the previous year was also a year where there were no black staff members.

23. On another occasion, a student who said the n-word was put in school suspension. Rogers usually worked with that student but he began to act strangely toward Rogers. During lunch, this student had his hand near Rogers' face but Rogers did not notice the motion because she was eating. However, she did observe her supervisor asking another staff sitting across from Rogers nonverbally through hand movement whether that staff saw it. When Rogers asked that staff about what the student did, the staff denied seeing anything. Nonetheless, there are cameras in that area to confirm or deny this incident.

24. Rogers had met with school upper management about such offensive behaviors of the students, but no remedial action was taken or discussed.

25. Roger also wrote an email to Kreisgman and Manos in or around late September/early October 2021 – engaging in protected activity – to prompt a conversation to address the issue of racism occurring at the school.

26. Rogers wrote, "*I am concerned about the children's lack of understanding of race and culture.* it should be noted that children are not born this way, it is a learned behavior in regards to racial inequality. I would like to know how are we going to address my ( these) concerns.

27. "*Diversity is occurring across our nation*. This first incident although I was offended I saw was an isolated incident. But when something else occurred this is now becoming a concerning pattern of behavior that needs to be addressed.

28. "*Although I was offended I would hope we would educate everyone in the building, parents, and the larger community on how to embrace and learn from our differences.*"

29. Defendant, once again, failed to address these serious concerns.

30. Moreover, there was also an email thread of middle school staff members sharing their concerns with Manos about the offensive language students used daily, but there was no follow-up. Staff shared their concerns about student behaviors, but there was not a clear answer from upper management to make all staff members feel safe in the work environment.

### C. Rogers Is Constructively Discharged and The Pinnacle School Swiftly Retaliates.

31. Unable to tolerate the consistent abuse and hostility any longer, especially considering that Defendant completely failed to take corrective action after being informed on various occasions, Rogers was left with no choice but to constructively discharge on July 28, 2022.

32. However, prior to Rogers' formally submitting her resignation, Kreisgman approached her about her decision to leave simply based on what others said and later directly told Human Resources about her decision before Rogers herself was able to.

33. Rogers later emailed Kreisgman about this unprofessional behavior, "My resignation letter and conversation with Lewis should have come directly from me… Overall, it's about being professional in this situation."

34. After this email exchange, Kreisgman did not speak much to Rogers. Kreisgman's negative attitude toward Rogers was clear.

35. Defendant did not cease its harassment and hostility toward Rogers even after her

constructive discharge.

36. Defendant falsely informed students and other staff members that Rogers had been terminated from her employment.

37. Upon information and belief, Kriegsman shared with a student that Rogers was fired based on her race since she was the only black lower schoolteacher. Kriegsman's falsely claiming that Rogers was terminated due to her race fully exhibited her animus toward Rogers.

38. Importantly, Defendant did not subject other individuals who resigned to such false accusations – further demonstrating its discriminatory and retaliatory intent.

## COUNT ONE

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### AFRICAN-AMERICAN RACE AND COLOR DISCRIMINATION

39. Plaintiff incorporates paragraphs 1-38, with the same force and impact as if fully set forth herein at length.

40. The Plaintiff is a black African-American.

41. The Plaintiff was qualified for the position she held.

42. The Plaintiff was subjected to disparate treatment based upon her color/race, including, but not limited to:

   (a) Consistently being subjected to discriminatory acts and derogatory terms at work, such as the n-word;

   (b) Not addressing her concerns after she voiced concerns to Defendant upper management about the hostile environment and discriminatory acts; and

(c) Falsely claiming that she was terminated due to her race after her constructive discharge.

43. Plaintiff suffered adverse employment actions, including, but not limited to:

(a) Being constructively discharged on July 28, 2022.

44. Defendant's actions were motivated by the Plaintiff's race/color.

45. As such, Defendant's actions and conduct are a violation of Title VII.

46. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

47. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

### COUNT TWO

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### HOSTILE WORK ENVIRONMENT

48. Plaintiff incorporates paragraphs 1-38, with the same force and impact as if fully set forth herein at length.

49. Throughout her employment, Plaintiff was subjected to multiple discriminatory acts motivated by her race, including, but not limited to:

(a) Consistently being subjected to discriminatory acts and derogatory terms at work, such as the n-word; and

(b) Not addressing her concerns after she voiced concerns to Defendant upper management about the hostile environment and discriminatory acts.

50. Defendant's acts were severe and pervasive and created an abusive work environment.

51. As such, Defendant's actions and conduct are a violation of Title VII.

52. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

53. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

### COUNT THREE

### RETALIATION,
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

54. Plaintiff incorporates paragraphs 1-38, with the same force and impact as if fully set forth herein at length.

55. Plaintiff engaged in protect activity multiple times by reporting to Defendant various hostile and discriminatory acts.

56. Defendant retaliated against the Plaintiff for engaging in protected activities by subjecting Plaintiff to adverse employment actions, including, but not limited to, the following:

    a)   Constructively discharging Plaintiff on July 28, 2022.

57. The above prescribed discriminatory action was motivated by the Defendant's retaliation against the Plaintiff.

58. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

59. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT FOUR

## VIOLATION OF CONN. GEN. STAT. § 31-51q

60. Plaintiff incorporates paragraphs 1-38, with the same force and impact as if fully set forth herein at length.

61. Plaintiff was exercising her free speech on matters of public concern with respect to an abusive work environment filled with race discrimination, protected by the First Amendment of the United States Constitution and Sections, 3, 4, and 14 of the Connecticut Constitution.

62. The exercise of these rights did not interfere with her job performance, nor did it interfere with her working relationship with Defendant.

63. Plaintiff was subjected to retaliation for reporting these issues, by Defendant constructively discharging her and later falsely claiming that she was terminated due to her race.

64. These acts of retaliation were the direct result of Plaintiff's speech on issues of public concern.

65. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

66. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

                THE PLAINTIFF,
                SHAQUISHA ROGERS


By: _____/s/_____
       Michael C. McMinn (*ct27169*)
       **THE MCMINN EMPLOYMENT LAW FIRM, LLC**
       1000 Lafayette Blvd., Suite 1100
       Bridgeport, CT 06604
       Tel: (203) 683-6007
       Fax: (203) 680-9881
       michael@mcminnemploymentlaw.com

       *COUNSEL FOR PLAINTIFF*